# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| SCOTT FEULESS AND PILAR SERETTI, | § § | |
| *Plaintiffs*, | § | CIVIL ACTION NO. 3:22-cv-00137 |
| VS. | § § | Jury Requested |
| SHADOW CREEK APARTMENTS, LLC AND NRED | § § § § | |
| *Defendants*. | | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs, Scott Feuless and Pilar Seretti, complain of Defendants, Shadow Creek Apartments, LLC and NRED, for causes of action as respectfully shown to the Court as follows:

## PARTIES

1. Plaintiff Scott Feuless is an individual citizen of the State of Texas.

2. Plaintiff Pilar Seretti is an individual citizen of the State of Texas.

3. Defendant Shadow Creek Apartments, LLC is a Missouri corporation with a principal place of business in Kansas and, pursuant to FRCP 4(e)(1), may be served by any method allowed by Texas Rule of Civil Procedure 106, including delivering, in person, or mailing by registered or certified mail, return receipt requested, a true copy of the citation and petition to its registered agent, **C T**

**Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136**.

4. Defendant NRED is believed to be a foreign corporation with a principal place of business in Kansas and, pursuant to FRCP 4(e)(1), may be served by any method allowed by Texas Rule of Civil Procedure 106, including delivering, in person, or mailing by registered or certified mail, return receipt requested, a true copy of the citation and petition to its president, **Kyle Scott,** at its principal office, **2020 W. 89th Street, Suite 320, Leawood, Kansas 66206.**

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiffs are Texas citizens and Defendants are Kansas citizens. Therefore, there is compete diversity of citizenship.

6. Venue is proper in the United States District Court for the Southern District of Texas, Galveston Division, pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Brazoria County, Texas, which is in said District and Division.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because amount in controversy exceeds $75,000.

## FACTS

8. Scott Feuless and Pilar Seretti are the natural parents of 27-year-old Nicholas Scott Feuless.

9. On or about March 13, 2022, pursuant to an Apartment Lease Contract with Defendant Shadow Creek Apartments, LLC ("SCA"), Nicholas Scott Feuless resided at 12501 Broadway Street, Apartment 15109, Pearland, Brazoria County, Texas in the Avenues of Shadow Creek Apartments ("Apartment 15109").

10. At all times material to this cause, Nicholas Scott Feuless was an invitee at the Avenues of Shadow Creek Apartments.

11. On or about March 13, 2022, while in Apartment 15109, Nicholas Scott Feuless was overcome by carbon monoxide emitted by his car that was in the enclosed garage attached to Apartment 15109.

12. On or about March 14, 2022, Nicholas Scott Feuless died of carbon monoxide poisoning while in Apartment 15109.

13. Immediately before being poisoned by carbon monoxide, Nicholas Scott Feuless was a healthy, able-bodied young man with a normal life expectancy.

14. Carbon monoxide is a colorless, odorless, and tasteless gas that is extremely poisonous.

15. Detecting excess amounts of carbon monoxide gas is easily done with carbon monoxide detectors or alarms that are readily commercially available and reasonably inexpensive.

16. Defendant SCA owned the Avenues of Shadow Creek Apartments at all times material to this cause.

17. Defendant NRED was the property manager for the Avenues of Shadow Creek Apartments at all times material to this cause.

18. Defendant NRED maintained an office with property managers on-site at the Avenues of Shadow Creek Apartments at all times material to this cause.

19. Upon information and belief, Defendant NRED was the property manager for the Avenues of Shadow Creek Apartments since the date its apartments were made available to lease.

20. Defendant NRED was founded in 1980 and has been in the property management business for over 40 years.

21. Defendant NRED manages a portfolio of more than 22 properties, in 10 cities over six states and valued in excess of $800,000,000.

22. Apartment 15109 is a one-bedroom, one-bath floor plan.

23. Apartment 15109 is a two-story floor plan with the living quarters on the second floor, and an attached, enclosed garage on the first floor.

24. Access to the second-floor living quarters in Apartment 15109 is via an interior staircase dedicated to the apartment.

25. There are two access points to the ground level of the stairway for Apartment 15109: (1) a door to the outside, and (2) a door to the attached, enclosed garage.

26. There are two access points to the attached, enclosed garage for

Apartment 15109: (1) a motorized overhead door on tracks from the outside drive, and (2) a door from the ground level of the interior stairway.

27. One may access the living space of Apartment 15109 from the attached, enclosed garage without having to go outside and while the motorized overhead door is closed.

28. Apartment 15109 did not have a carbon monoxide detector or alarm at the time of Nicholas Scott Feuless' death.

29. None of the apartments at the Avenues of Shadow Creek Apartments had carbon monoxide detectors at the time of Nicholas Scott Feuless' death.

30. Construction of the Avenues of Shadow Creek Apartments was completed in about 2013.

31. Apartments at the Avenues of Shadow Creek Apartments have been offered for lease since about 2013.

32. Since, at the latest, when the apartments at the Avenues of Shadow Creek Apartments were first offered for lease, Defendants SCA and NRED have known that residents would drive vehicles with internal combustion engines into and out of the attached, enclosed garages at the Avenues of Shadow Creek Apartments.

33. Since, at the latest, when the apartments at the Avenues of Shadow Creek Apartments were first offered for lease, Defendants SCA and NRED have

advertised and marketed to potential residents that apartment units at the Avenues of Shadow Creek Apartments provided attached, enclosed garages.

34. Since, at the latest, when the apartments at the Avenues of Shadow Creek Apartments were first offered for lease, Defendants SCA and NRED intended for residents to drive vehicles with internal combustion engines into and out of the attached, enclosed garages at the Avenues of Shadow Creek Apartments.

35. Since, at the latest, when apartments at the Avenues of Shadow Creek Apartments were first offered for lease, Defendants SCA and NRED have known that vehicles with internal combustion engines would emit carbon monoxide while running inside the attached, enclosed garages at the Avenues of Shadow Creek Apartments.

36. All landlord-provided appliances in the apartments at the Avenues of Shadow Creek Apartments are electric.

37. None of the apartments at the Avenues of Shadow Creek Apartments have ever had landlord-provided gas appliances.

38. The most probable source of carbon monoxide inside the living space of an apartment at the Avenues of Shadow Creek Apartments is exhaust from an internal combustion engine vehicle in the garage.

39. At all times from when the Avenues of Shadow Creek Apartments were first offered for lease until the date of Nicholas Scott Feuless' death, Defendants

SCA and NRED knew that carbon monoxide detectors, like smoke detectors, were commercially available and relatively inexpensive.

40. At all times from when the Avenues of Shadow Creek Apartments were first offered for lease until the date of Nicholas Scott Feuless' death, Defendant SCA had the authority to install carbon monoxide detectors in the Avenues of Shadow Creek Apartments, including Apartment 15109.

41. At all times from when the Avenues of Shadow Creek Apartments were first offered for lease until the date of Nicholas Scott Feuless' death, Defendant SCA chose to not to install carbon monoxide detectors at the Avenues of Shadow Creek Apartments.

42. At all times from when it first began managing the Avenues of Shadow Creek Apartments until the date of Nicholas Scott Feuless' death, Defendant NRED knew that carbon monoxide detectors, like smoke detectors, were commercially available and relatively inexpensive.

43. At all times from when the Avenues of Shadow Creek Apartments were first offered for lease until the date of Nicholas Scott Feuless' death, Defendant SCA knew that carbon monoxide was dangerous and life threatening.

44. At all times from when the Avenues of Shadow Creek Apartments were first offered for lease until the date of Nicholas Scott Feuless' death, Defendant SCA knew that having attached, enclosed garages pose a risk of harm due to carbon

monoxide exposure from vehicle exhaust.

45. At all times from when it first began managing the Avenues of Shadow Creek Apartments until the date of Nicholas Scott Feuless' death, Defendant NRED knew that carbon monoxide was dangerous and life threatening.

46. At all times from when it first began managing the Avenues of Shadow Creek Apartments until the date of Nicholas Scott Feuless' death, Defendant NRED had the authority and ability to install carbon monoxide detectors in the Avenues of Shadow Creek Apartments, including Apartment 15109.

47. During the same time that Defendant NRED managed the Avenues of Shadow Creek Apartments, it also managed one or more apartment complexes that had carbon monoxide detectors installed in individual apartments.

48. Defendant SCA never told Nicholas Scott Feuless or Plaintiffs about the dangers of carbon monoxide exposure from automobile exhaust from inside the garage for Apartment 15109.

49. Defendant NRED never told Nicholas Scott Feuless or Plaintiffs that he could install a carbon monoxide detector in Apartment 15109.

50. Upon information and belief, prior to Nicholas Scott Feuless' death, Defendant NRED notified Defendant SCA about the risk of carbon monoxide poisoning due to the attached, enclosed garages at the Avenues at Shadow Creek Apartments.

## CAUSE OF ACTION – NEGLIGENCE OF DEFENDANT SHADOW CREEK APARTMENTS, LLC AND NRED

51. Plaintiffs incorporate herein by reference for this cause of action paragraphs 8-46.

52. Defendants SCA and NRED, individually or in combination, owed a legal duty to exercise reasonable care to warn and protect its tenants from carbon monoxide poisoning in the living space of its apartments, including Apartment 15109.

53. Defendant SCA and NRED, individually or in combination, owed a legal duty to exercise reasonable care to warn tenants at the Avenues of Shadow Creek Apartments, including Nicholas Scott Feuless, of the dangers associated with carbon monoxide coming from a running car in the attached, enclosed garage at Apartment 15109.

54. Defendants SCA and NRED, individually or in combination, breached the duties it owed to Plaintiffs in many ways, including but not limited to, by failing to warn Nicholas Scott Feuless of the dangers associated with carbon monoxide coming from a car in the attached, enclosed garage, by failing to have a carbon monoxide detector in Apartment 15109, and by failing to inform Nicholas Scott Feuless of the need for a carbon monoxide detector.

55. Defendants SCA and NRED's actions and omission, individually or in combination, constitute negligence and such negligence was a proximate cause of

Nicholas Scott Feuless' death and Plaintiffs' damages.

## CAUSE OF ACTION – PREMISES LIABILITY OF DEFENDANT SHADOW CREEK APARTMENTS, LLC

56. Plaintiffs incorporate herein by reference for this cause of action paragraphs 8-46.

57. The lack of a carbon monoxide detector in Apartment 15109 with an attached, enclosed garage was a condition that posed an unreasonable risk of harm.

58. Defendants SCA and NRED knew or should have known of the danger posed by the condition.

59. Defendants SCA and NRED, individually or in combination, failed to exercise ordinary care to protect Nicholas Scott Feuless from the danger, by both failing adequately warn him of the condition and failing to make the condition reasonably safe by, among other things, installing a carbon monoxide detector.

60. The acts and omissions of Defendants SCA and NRED, individually or in combination, constitute negligence and such negligence was a proximate cause of Nicholas Scott Feuless' death and Plaintiffs' damages.

## TEXAS WRONGFUL DEATH ACT

61. Plaintiffs Scott Feuless and Pilar Seretti are Nicholas Scott Feuless' natural parents and the only statutory wrongful death claimants pursuant to TEX. CIV. PRAC. & REM. CODE § 71.001 *et seq.*

62. Plaintiffs seek recovery for the actual damages each has suffered as a

result of the wrongful death of their son, Nicholas Scott Feuless.

## DAMAGES

63. As a result of the incident made the basis of this lawsuit described in the preceding paragraphs and the negligence of each Defendant, Plaintiffs sustained significant injuries and damages in the past and will, in reasonable probability, sustain damages in the future.

64. Plaintiffs, as natural parents of Nicholas Scott Feuless, seek recovery for the monetary value of the all the damages they have and will suffer, including loss of companionship and society, that is, the loss of the positive benefits flowing from the love, comfort, companionship, and society that Scott Feuless and Pilar Seretti, in reasonable probability, would have received from Nicholas Scott Feuless, had he lived.

## JURY DEMAND

65. Pursuant to FRCP 38, Plaintiffs respectfully demand a jury trial for all issues so triable.

## PRAYER FOR RELIEF

66. WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Shadow Creek Apartments, LLC and NRED be cited in terms of law to appear and answer herein, that upon final trial and hearing hereof, that each Plaintiff recover damages in accordance with the evidence, that each Plaintiff recover costs of court

herein expended, that each Plaintiff recover interest to which each Plaintiff is justly entitled under the law, and for such other further relief, both general and special, both in law and in equity, to which each Plaintiff may be justly entitled.

Dated: May 4, 2022

                                      Respectfully submitted,

                                      **PERDUE & KIDD**

                                      By: */s/ Donald H. Kidd*
                                      Donald H. Kidd
                                      State Bar No. 11383100
                                      Southern District of Texas No. 15875
                                      dkidd@perdueandkidd.com
                                      777 Post Oak Blvd., Suite 450
                                      Houston, Texas 77056
                                      Tel:   (713) 520-2500
                                      Fax:   (713) 520-2525

                                      **ATTORNEYS FOR PLAINTIFF**

**OF COUNSEL:**

Michael R. Clinton
Texas Bar No. 24087317
So. Dist. Texas No. 3183062
Email: mclinton@perdueandkidd.com
PERDUE & KIDD
777 Post Oak Blvd., Suite 450
Houston, Texas 77056
Tel:   (713) 520-2500
Fax:   (713) 520-2525